IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANA PETERSON, M.D.**,

    Plaintiff,

    v.                                    Civ. No. 10-1106 BB/DJS

**SUN LIFE ASSURANCE COMPANY
OF CANADA,**

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Sun Life Assurance Company's Motion for Summary Judgment (Doc. 21). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be *GRANTED*.

### Summary of Relevant Facts

Plaintiff Dana Peterson began working for Southwest Medical Associates, Inc. as a family practice physician in the month of February 1992. On January 1, 2007, Defendant Sun Life Assurance Company of Canada ("Sun Life") issued Group Policy No. 9409 ("Policy") for long-term disability insurance to Southwest Medical Associates**,** Inc. Doc. 22, p. 1. Due to a complaint against Plaintiff, Southwest Medical Associates, Inc. placed him on a reduced schedule from February 15, 2008 to November 20, 2008. SLA 00147[1]. On September 1, 2008, the New Mexico Medical Board issued an order wherein Plaintiff is required to "have a chaperone who is a member of his medical practice chaperone all medical visits by female patients and all patients under 18 years old*."* SLA 00192. Plaintiff was terminated from employment by Southwest Medical Associates, Inc. ("Southwest Medical") on November 24, 2008. Doc. 22, p. 8.

---

[1] Due to the voluminous nature of the evidence in this case, the exhibits have been Bates stamped but not filed on CM/ECF. The stamp count begins at SLA 0001 and numbers upward to SLA 01332.

Plaintiff applied for disability benefits under the Policy by a claim form dated December 2, 2008. SLA 00074-76. He listed his disabilities as ankylosing spondylitis, severe stress and depression resulting from "legal issues in [his] life." SLA 00074.

When asked for a statement of Plaintiff's employment status, Southwest Medical informed Defendant that Plaintiff's "employment was terminated effective November 24, 2008 for reasons unrelated to any claimed disability. Moreover, prior to his termination [Plaintiff] never indicated to Southwest Medical Associates that he allegedly suffered from any disability." Doc. 22, p. 9; SLA 00499. Defendant engaged two independent medical reviewers to assess Plaintiff's claim under the policy. On February 2, 2009, Barry Klegman, M.D., issued a review wherein he stated that the information in Plaintiff's file did not indicate that he had a condition that impacted his ability to work. Doc. 22, p. 10; SLA 00601-602. Three weeks later, James Sarni, M.D., issued a review of Plaintiff's medical information; he reported that it was reasonable to limit Plaintiff to a light duty occupation. Doc. 22, p. 10; SLA 01027-1032. Then, on March 3, 2009, Defendant denied Plaintiff's claims for partial and total disability benefits under the Policy.

On August 25, 2009, Plaintiff appealed Defendant's denial of his claim for benefits. Doc. 22, p. 11. The appeal included a letter from Robert Goodkind, Ph.D., stating that he had been treating Plaintiff since December 29, 2008 and that he believed Plaintiff could not work due to mental health symptoms. SLA 01075. Plaintiff's appeal also included a report from William E. Foote, Ph.D., which was prepared for Monarch Life Insurance Company. Dr. Foote's report, based on evaluations of Plaintiff performed March 24 and 25 of 2009, contained his opinion that Plaintiff was "temporarily disabled from his work as a family practice physician." SLA 1091.

Defendant then engaged an independent reviewer, Behavioral Medical Interventions ("BMI"), to evaluate all of Plaintiff's treatment records in order to determine whether Plaintiff had any medical or psychiatric limitations starting around February 2008 or thereafter. Doc. 22, p. 13; SLA 01134-1137. BMI assigned two physicians to review Plaintiff's claim, which

included the new documentation submitted by Plaintiff with his appeal.  Doc. 22, p. 14.  Dr. Martens, a rheumatologist, stated that Plaintiff did not have any worsening physical capacity when he was terminated on November 24, 2008.  He also noted that Plaintiff continued to ride a bicycle for up to an hour at time, "which in [his] opinion is more stressful than anything done in a family practice office."  Doc. 22, p. 15; SLA 01139-1149.  Dr. Martens concluded that all of Plaintiff's medical information indicated Plaintiff "had the physical capacity to continue to perform his profession until the date of his termination, 11/24/2008."  SLA 01146.  Dr. Gerson, a psychiatrist, reviewed all of Plaintiff's psychiatric records.  He concluded that Plaintiff "was capable of engaging in full-time vocational work from 2/15/08 and thereafter."  SLA1149.

On October 29, 2009, Defendant denied Plaintiff's appeal.  Defendant concluded that Plaintiff was capable of performing the material and substantial duties of his occupation on or about November 24, 2008, when his employment was terminated.  SLA01156-1162.  Defendant also noted that Plaintiff's disability coverage ended when his employment ended.  *Id*.  Plaintiff then filed suit in this Court on November 22, 2010.  Doc. 1.  He challenges Defendant's denial of his disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA")**.**

**Jurisdiction**

Plaintiff brings this suit pursuant to ERISA, 29 U.S.C. § 1001 *et seq*.  The Court has jurisdiction over the suit pursuant to 42 U.S.C. § 1331 ("federal question").

**Standard of Review**

According to the provisions of ERISA, benefit providers may retain the authority to interpret ambiguous provisions in a plan.  *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007); *see* 29 U.S.C. § 1002(21)(A)(i).  When an ERISA provider retains that authority in explicit terms, courts employ a deferential standard of review when analyzing the provider's decisions.  *Id*. (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111

(1989)).  "To qualify their decisions for deferential review, *Firestone* [489 U.S. 101] requires only that ERISA health plan administrators and fiduciaries reserve discretionary authority to themselves in the plan document."  *Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 925 (10th Cir. 2006).  If the ERISA administrator or fiduciary does not have discretionary authority, then courts will review a denial of benefits under the *de novo* standard of review.  *Firestone*, 489 U.S. at 115.

Defendant claims it has discretionary authority under the terms of the ERISA plan in this case, and so the Court should apply a deferential standard of review to its denial of Plaintiff's benefits.  Doc. 22, p. 16.  Plaintiff counters that Defendant has no such discretion under the Policy and that *de novo* is the proper standard of review.  Doc. 26, p. 11.

Defendant cites one page of the Policy claim provisions in support of its argument that it has discretionary authority to determine benefits.  Doc. 22, p. 16; SLA 00048.  According to the cited material, claimants must submit proof of their disability with their claim for benefits.  SLA 00048.  The proof of the disability "must be satisfactory to [Defendant] Sunlife."  *Id*.  The Tenth Circuit has expressly held "that the 'satisfactory to Sun Life' language suffices to convey discretion to Sun Life in finding the facts relating to disability."  *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1268 (10th Cir. 2002).  Since the Policy "gives discretion to Sun Life in finding the facts relating to disability, [the Court] must uphold Sun Life's decisions as a fact finder unless they were arbitrary or capricious."  *Id*. at 1269.

> When reviewing under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness-even if on the low end.

*Id*. (quoting *Kimber v. Thiokol Corp*., 196 F.3d 1092, 1098 (10th Cir.1999)).

**Discussion**

Plaintiff's insurance coverage from Defendant ended when his employment was terminated. SLA 000031. Under the Policy, Plaintiff could receive disability benefits if he had become totally or partially disabled while he was insured. SLA 00032. Plaintiff would qualify for "Total Disability" benefits if he was earning 20% or less of his estimated monthly income and if he was "unable to perform the Material and Substantial Duties" of his occupation due to injury or sickness. *Id*. He would qualify for "Partial Disability" benefits if he earned between 20% and 80% of his estimated monthly income, and if he was "unable to perform the Material and Substantial Duties" of his occupation due to injury or sickness. SLA 00034. Plaintiff would be eligible to receive long term disability ("LTD") benefits if he provided proof that he continued to be partially or totally disabled, as defined above, and that he required "the regular and continuing care" of a physician. SLA 00032.

Plaintiff's employment, and thus his insurance coverage from Defendant, ceased on November 24, 2008. In order to qualify for either partial or total disability benefits, his disabling conditions would have had to exist before November 24, 2008. In his claim for LTD benefits, Plaintiff wrote that he first noticed symptoms of his illness February 15, 2008 and the first day he was unable to work was November 20, 2008. SLA 00074.

The record contains ample evidence that Plaintiff had a valid diagnosis of ankylosing spondylitis long before he was terminated from Southwest Medical. *See, e.g.*, SLA 01140. Whether the disease impaired Plaintiff's ability to complete the 'material and substantial duties' of his profession is another question. Dr. Martens, who was engaged by Defendant to review Plaintiff's medical record, noted that Plaintiff was afflicted by ankylosing spondylitis, but he asserted that Plaintiff "had the physical capacity to continue to perform his profession until the date of his termination, 11/24/2008." SLA 01146. Moreover, Plaintiff never notified his employer that he was unable to work due to a disability. SLA 00499.

Referred by his primary care doctor, Dr. Gwen Robinson, Plaintiff initiated physical therapy on June 18, 2008. SLA 00579. Notes from the physical therapist indicate that Plaintiff did have neck and back pain at that time. *Id*. The physical therapist recommended various exercises and return visits for Plaintiff. SLA 00580. Plaintiff attended nine physical therapy sessions, the last of which was November 12, 2008. SLA 00578. He canceled his last appointment and discontinued the treatment. *Id*. There was no evidence in the physical therapy report that Plaintiff's back and neck pain prevented him from working. On the contrary, Plaintiff voluntarily ceased treatment prior to his termination.

Dr. Robinson examined Plaintiff on November 18, 2008. In her report of the examination, she noted that Plaintiff was capable of "light capacity" work. SLA 00082. Under a "light capacity" restriction, Plaintiff would be capable of "lifting, carrying, pushing, pulling 20 lbs. occasionally; 10 lbs frequently; or negligible amount constantly." *Id.* His work could "include walking and/or standing frequently..." *Id.* According to Southwest Medical's Employer Statement, Plaintiff's daily tasks as a family physician were consistent with "light capacity" work, as defined by Dr. Robinson. See SLA 00501-502. He would have to sit, stand, and walk throughout the day, but he could do each of those "at will." SLA 00501. He did not have to do any other physically demanding task besides occasionally lifting 5-25 lbs. or occasionally carrying 5-25 lbs. SLA 00502.

In short, there are enough facts in the record for the Court to find that Defendant's decision to deny benefits to Plaintiff was grounded on a "reasonable basis." *See Nance*, 294 F.3d at 1269. At least regarding ankylosing spondylitis, there is evidence from multiple sources that Plaintiff was not so far impaired as to be unable to carry out the tasks of his day to day job. His own primary care doctor treated him for ankylosing spondylitis, but she believed he was capable of working at a light capacity. Defendants easily surpass the low threshold of the arbitrary and capricious standard for denying disability benefits.

As with ankylosing spondylitis, the record presents no reason to doubt that Plaintiff suffered from anxiety and possibly depression prior to his termination.  However, his level of mental illness was "not consistent with impairment."  SLA 01148.  Plaintiff points to multiple mental health evaluations that indicate he was unable to work after November 24, 2008[2].  Although the Court does not question the veracity of those evaluations, it cannot ignore the fact that they occurred *after* Plaintiff was terminated and are therefore inapplicable to Defendant's denial of benefits.  All medical reports dated before November 24, 2008 indicate that Plaintiff was able to work despite developing symptoms of mental illness.  He did not begin to see a therapist until November 24, 2008–the day he was terminated from Southwest Medical.  Thus, Defendant's denial of Plaintiff's claim for benefits based on mental health disability was neither arbitrary nor capricious.

Plaintiff correctly notes that reviewing courts must consider the potential conflict of interest when an insurance company "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket."  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  It appears from the record that Defendant determines benefit eligibility and pays out of its own pocket to claimants.  As such, the Court must consider whether this ostensible conflict of interest affects the reasonableness of Defendant's denial of Plaintiff's benefits.  *Id*. at 115.  Defendant's potential conflict of interest is one of many factors to consider in this case.  *See id.*  If it were a close call between denying and granting benefits, the conflict of interest factor would tip the scale in favor of the claimant.  *See id.* at 117.  However, this is not a close case.  As

---

[2] One letter from Dr. Robinson recommended a two week leave of absence from work due to Plaintiff's health.  The letter was dated January 18, 2009, but it was stamped "received" on November 20, 2008.  The parties did not explain the discrepancy in dates.  The Court surmises it was written on January 18, 2009, because Southwest Medical states it did not receive any notice from Plaintiff that he was unable to work prior to his termination on November 24, 2008.  SLA 00499.  Also, Dr. Robinson conducted an evaluation of Plaintiff's health on November 18, 2008 wherein she explicitly stated that Plaintiff was capable of working.  SLA 00501-502.

outlined in detail above, every report and evaluation written on or before November 24, 2008 indicates that Plaintiff was capable of performing his duties as a physician, even though he did suffer from physical and mental health maladies.  Plaintiff's own physician wrote that he was capable of light duty work, which was consistent with his daily job requirements.  SLA 00501-502. He was not disabled, as defined by the Policy, when he was employed by Southwest Medical.  Therefore, he was not entitled to disability benefits under the Policy.

Also, Defendant attempted to mitigate its potential conflict of interest by engaging third-party professionals to review Plaintiff's claim for disability benefits.  All of these medical professionals opined that Plaintiff was able to work as a family health practitioner.  SLA 00601-602; SLA 01027-1032; SLA 01139-1149.  There is no evidence that Defendant acted out of a conflict of interest when denying benefits to Plaintiff; rather, the record shows that there was a sufficient basis to find that Plaintiff was not disabled as defined by the Policy.

## Conclusion

Pursuant to the foregoing, the motion for summary judgment will be *GRANTED*.

Dated this 9th day of August, 2011.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE